[Cite as *State v. Deadwiley*, 2020-Ohio-1605.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | No. 108488 |
| v. | : | |
| JAMES DEADWILEY, | : | |
| Defendant-Appellant. | : | |

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 23, 2020

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-17-622444-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Brad S. Meyer, Assistant Prosecuting Attorney, *for appellee.*

James J. Hofelich, *for appellant.*

RAYMOND C. HEADEN, J.:

{¶ 1} Defendant-appellant James Deadwiley ("Deadwiley") appeals from his convictions for rape, attempted rape, and kidnapping with numerous specifications. For the reasons that follow, we affirm.

## Procedural and Substantive History

**{¶ 2}** On November 1, 2017, Deadwiley was indicted on one count of rape in violation of R.C. 2907.02(A)(2), one count of rape in violation of R.C. 2907.02(A)(1)(c), and one count of kidnapping in violation of R.C. 2905.01(A)(4). All three counts carried notice of prior conviction specifications, repeat violent offender specifications, and sexually violent-predator specifications. The kidnapping count also carried a sexual motivation specification.

**{¶ 3}** Deadwiley initially entered a plea of not guilty to all charges. On February 8, 2019, Deadwiley waived his right to a jury trial on all sexually violent-predator specifications. On February 11, 2019, a jury trial on all other counts and specifications began.

**{¶ 4}** These charges arose from an incident in the early morning hours on May 25, 2014. The victim, O.H., testified at trial and described the events as follows. On May 24, 2014, O.H. had gone with her boyfriend, Brandon Crider ("Crider"), and their youngest child to a barbecue at Crider's friend's house. O.H. drank wine and played cards at the barbecue. Later that night, O.H. was ready to leave the barbecue but could not find her boyfriend. O.H. went outside and began to walk down the street towards St. Clair Avenue. The next thing O.H. remembered was waking up in the driveway behind Chambers Elementary School in East Cleveland. (Tr. 519-520.) Upon waking up and realizing where she was, she began walking towards her mother's house on Shaw Avenue. While walking, she sensed someone behind her and turned to see a man wearing a hooded sweatshirt approach her. The man

grabbed her, dragged her down a hill, took off her pants, and tried to vaginally penetrate her. O.H. fought him off, and he turned her around and penetrated her from behind. O.H. was eventually able to get away from the man and began running towards Shaw Avenue.

{¶ 5} O.H. was only wearing a shirt. A man in a truck drove by and stopped upon seeing O.H. crying. O.H. told the man she had been raped and asked him to drive her to her mother K.H.'s ("K.H.") house. Upon arriving, O.H. described what had happened and K.H. called the police. At trial, K.H. testified that when O.H. was dropped off, she was naked from the waist down, was shaking as though she was in shock, and appeared scared. K.H. also testified that O.H. had red marks on her neck and was complaining about pain in the back of her head.

{¶ 6} At trial, the state called Officer Tyler Smith ("Officer Smith"), who was an East Cleveland police officer at the time of the assault in this case. Around 2:30 a.m. on May 25, 2014, Officer Smith and his partner went to K.H.'s house in East Cleveland, Ohio in response to a 911 call regarding a rape that had just occurred. Officer Smith testified that upon arriving at that address, he spoke to K.H., who then led the officers to O.H., who was sitting in a chair wearing a black shirt and a towel and was not wearing pants or underwear. Officer Smith testified that O.H. was very quiet, appeared to be in a daze, and looked "traumatized." Officer Smith also recalled that O.H.'s hair was a little messy and one of her cheeks was bruised.

{¶ 7} According to Officer Smith, O.H. told him that she had been walking home from a party in the area of East 152nd Street and St. Clair Avenue in Cleveland

and when she was walking along the wall behind Chambers Elementary School, she was approached from behind by two men who put something around her neck, forced her to the ground, and raped her. O.H. told Officer Smith that she was eventually able to get away from her assailants and run to her mother's house on Shaw Avenue. Officer Smith testified that O.H. described a man driving by and asking her if she was okay. Officer Smith testified that O.H. provided a description of one of her assailants, describing a black man, approximately five-feet, six-inches tall, in his early fifties, and wearing dark clothing. Officer Smith then called EMS so that O.H. could be examined by medical staff and a rape kit could be collected.

{¶ 8} Officer Smith testified that he and other police officers then began to canvass the area in attempt to locate evidence or identify any witnesses or suspects that might be in the area. Other officers found a man, Melvin Ervin ("Ervin"), in the area very close to where O.H. said she was raped, so they questioned him. Ervin was voluntarily transported by the officers to the ambulance that was transporting O.H. to the hospital, and a cold stand was conducted. While O.H. was laying on a cot inside the ambulance, and Ervin was approximately 20 feet from the ambulance with a police car spotlight shining on him because it was dark, O.H. positively identified Ervin as one of her assailants. Officer Smith then went to the hospital where O.H. was examined, and subsequently went back to the scene to look for additional evidence.

{¶ 9} The state also called Denise Robinson ("Robinson"), who testified that she was the sexual-assault nurse examiner ("SANE") who administered a SANE

exam and collected a rape kit from O.H. Robinson referred to her report and testified that O.H. told her that two assailants had assaulted her through vaginal penetration and one of them put their mouth on her genitals. O.H. also informed Robinson that something was put around her neck in an attempt to choke her. Robinson testified that O.H. had redness and bruising on her neck, bruising and scratching on her elbow, arms, and hands, two abrasions on her face, lacerations on both knees, and abrasions on her back. Robinson also testified that O.H. was crying, had a sad affect, and was quiet but was able to provide relevant information during the examination.

{¶ 10} The state called Brittani Troyer ("Troyer"), a forensic scientist who received O.H.'s rape kit in this case and sent the DNA evidence in it to be analyzed, and Andrew Sawin ("Sawin"), the DNA analyst who tested O.H.'s rape kit. Sawin testified that Ervin was excluded as a contributor to the mixture of DNA contained in O.H.'s rape kit. Sawin also testified that he determined that Deadwiley was a contributor to the DNA mixture.

{¶ 11} The state also called Crider, who testified that he had a lot to drink at the party and ultimately passed out on the couch. He woke up the next morning to his phone ringing and his son crying. Crider testified that O.H.'s family called him to tell him what had happened the night before. Crider testified that he went to see O.H. at the hospital that morning and took her home. Several days later, Crider gave a statement to the police.

{¶ 12} Finally, the state called Detective Joseph Marche ("Detective Marche"), who testified that in September 2017, the Ohio Bureau of Criminal Investigation notified him of an investigatory lead in this case related to Deadwiley. Marche then reached out to O.H. and conducted another interview with her. During this interview, he presented photo array to O.H. with photos of six individuals, including Deadwiley. O.H. did not identify Deadwiley as her assailant. Marche testified that Deadwiley lived on Elm Street, which borders Chambers Elementary School. Marche also testified that as a result of the subsequent investigation, Deadwiley was ultimately indicted. The state also called Detective Ernest Stanford ("Detective Stanford"), who testified that he took a buccal swab from Deadwiley.

{¶ 13} At the close of the state's case, defense counsel made a Crim.R. 29 motion for acquittal as to all counts. The state moved to amend the second count of rape to attempted rape. The court denied Deadwiley's motion and granted the state's motion to amend.

{¶ 14} On February 12, 2019, the jury returned a verdict of guilty on all three counts. On April 2, 2019, the court held a hearing on the specifications. The state presented evidence in the form of documentation relating to Deadwiley's prior convictions for attempted rape and corresponding classification as a sexual predator. The court ultimately found Deadwiley guilty of all specifications and proceeded to sentencing. The court heard from the prosecutor and defense counsel. The kidnapping count was merged for sentencing, and the court imposed a sentence

of ten years to life in prison on the rape count and five years to life in prison on the attempted rape count, to be served consecutively.

{¶ 15} Deadwiley appeals, presenting two assignments of error for our review.

**Law and Analysis**

{¶ 16} In his first assignment of error, Deadwiley argues that his conviction is against the manifest weight of the evidence. Specifically, Deadwiley argues that the inconsistencies in O.H.'s story, as well as her misidentifications of her assailant, created a manifest miscarriage of justice.

{¶ 17} A manifest weight challenge attacks the quality of the evidence and questions whether the state met its burden of persuasion at trial. *State v. Hill*, 8th Dist. Cuyahoga No. 99819, 2014-Ohio-387, ¶ 25, citing *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13. When reviewing a manifest weight challenge, a court reviews the entire record, weighing all evidence and reasonable inferences and considering the credibility of the witnesses, to determine whether the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶ 18} Deadwiley also emphasizes evidence that was not found or presented in this case, such as O.H.'s missing clothing or any evidence of injury to her vagina. The absence of such evidence does not create a manifest miscarriage of justice, especially in the light of conclusive DNA evidence that Deadwiley had sexual contact

with O.H.  Further, Deadwiley is correct that O.H.'s testimony contained numerous inconsistencies.  These inconsistencies, however, do nothing to call into question the uncontroverted DNA evidence.  Therefore, we do not find that the jury lost its way. Deadwiley's convictions are not against the manifest weight of the evidence, and his first assignment of error is overruled.

{¶ 19} In his second assignment of error, Deadwiley argues that the trial court erred in finding him guilty of various specifications because they were not supported by sufficient evidence.  Specifically, Deadwiley argues that the evidence the state presented related to the specifications in this case was not properly authenticated.  Further, Deadwiley asserts that the court did not provide any analysis with respect to the statutory factors it considered in determining that Deadwiley was a sexually violent predator.

{¶ 20} At the hearing on the specifications, the state presented evidence in the form of two certified journal entries reflecting Deadwiley's prior conviction and sentence for attempted rape, as well as documentation from that sentence reflecting the court's classification of Deadwiley as a sexual predator.  The state also introduced a report from the sheriff's office comparing Deadwiley's fingerprints to the fingerprints of the defendant in the prior case.  The state presented this exhibit as a link between the two cases, and Deadwiley did not contest his identity at this hearing.  Deadwiley concedes that the certified journal entries are self-authenticating documents pursuant to Evid.R. 902.  Therefore, there was no

requirement that the documents be authenticated through extrinsic evidence of authenticity. Evid.R. 902.

{¶ 21} Unlike a manifest weight challenge, the test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, at ¶ 12. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Thompkins*, 78 Ohio St.3d at 386, 678 N.E.2d 541.

{¶ 22} As an initial matter, we note that although defense counsel objected when the state presented evidence at the hearing on the specifications, the objection was not related to the authentication of the evidence. Instead, defense counsel objected by stating: "[w]e don't believe that these exhibits that the State is offering to the Court is sufficient to establish that my client did engage in sexual conduct with this victim and/or that he was previously found to be a sexual predator." (Tr. 702.)

{¶ 23} Essentially, the objection was arguing that the state's evidence was insufficient to support a conviction on the specifications. Because the objection was not related to the admissibility of the evidence, our review of this issue is limited to plain error. The documents presented by the state were self-authenticating certified records pursuant to Evid.R. 902. Therefore, the admission of this evidence was not plain error.

{¶ 24} R.C. 2971.01(H)(1) defines "sexually violent predator" as "a person who, on or after January 1, 1997, commits a sexually violent offense and is likely to engage in the future in one or more sexually violent offenses." The statute further provides:

> (2) For purposes of division (H)(1) of this section, any of the following factors may be considered as evidence tending to indicate that there is a likelihood that the person will engage in the future in one or more sexually violent offenses:
>
> (a) The person has been convicted two or more times, in separate criminal actions, of a sexually oriented offense or a child-victim oriented offense. For purposes of this division, convictions that result from or are connected with the same act or result from offenses at the same time are one conviction, and a conviction set aside pursuant to law is not a conviction.
>
> (b) The person has a documented history from childhood, into the juvenile developmental years, that exhibits sexually deviant behavior.
>
> (c) Available information or evidence suggests that the person chronically commits offenses with a sexual motivation.
>
> (d) The person has committed one or more offenses in which the person has tortured or engaged in ritualistic acts with one or more victims.
>
> (e) The person has committed one or more offenses in which one or more victims were physically harmed to the degree that the particular victim's life was in jeopardy.
>
> (f) Any other relevant evidence.

{¶ 25} Deadwiley argues that no evidence was presented with regard to any of these factors, and the trial court did not engage in any analysis of the factors. We disagree.

{¶ 26} The state presented evidence of Deadwiley's prior convictions for sexual offenses, as well as a prior opinion from this court affirming his classification as a sexual predator. *State v. Deadwylie*, 8th Dist. Cuyahoga No. 78582, 2001 Ohio App. LEXIS 3218 (July 19, 2001).[1] This evidence goes directly to factors (a) and (c). Although Deadwiley has argued that the court did not engage in any analysis regarding these factors, it appears from our review of the record that the court properly considered relevant evidence related to the statutory factors. Therefore, we conclude that there was sufficient evidence for the court to classify Deadwiley as a sexually violent predator with repeat violent offender and notice of prior conviction specifications. Deadwiley's second assignment of error is overruled.

{¶ 27} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

---

[1] Although Deadwiley's name is spelled "Deadwylie" in the opinion affirming his prior classification as a sexual predator, and he appears to challenge the connection between himself and all of the state's evidence, his identity was not contested at trial. Further, the state introduced an exhibit comparing Deadwiley's fingerprints to those of the defendant in the prior case showing that they were the same, and court records reveal that Deadwiley was the defendant-appellant in the 2001 case.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.

_____
RAYMOND C. HEADEN, JUDGE

SEAN C. GALLAGHER, P.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR